**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**

NATIONWIDE MUTUAL INSURANCE COMPANY                                    PLAINTIFF

v.                                                                                         CIVIL ACTION NO. 3:05-cv-690WS

LAKE CAROLINE, INC. &
A&F PROPERTIES, LLC                                                                    DEFENDANTS

**ORDER GRANTING SUMMARY JUDGMENT**

Before the court is a declaratory judgment action brought pursuant to Title 28 U.S.C. §§ 2201 and 2202[1] by the plaintiff Nationwide Mutual Insurance Company ("Nationwide"). The Declaratory Judgment Act, Title 28 U.S.C. §§ 2201 - 2202 (see footnote 1), does not confer subject matter jurisdiction on the federal courts. *See Skelly Oil Company v. Phillips Petroleum Company*, 339 U.S. 667, 671, 70 S.Ct. 876, 94 L.Ed. 1194 (1950) (the Declaratory Judgment Act, being procedural only, did not extend the subject matter jurisdiction of the federal courts); *Red Lobster Inns of America, Inc. v. New England Oyster House, Inc.*, 524 F.2d 968, 969 (5th Cir. 1975);

---

[1]Title 28 U.S.C. § 2201 provides in part that, "(a) [i]n a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986, a proceeding under section 505 or 1146 of title 11, or in any civil action involving an antidumping or countervailing duty proceeding regarding a class or kind of merchandise of a free trade area country (as defined in section 516A(f)(10) of the Tariff Act of 1930), as determined by the administering authority, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

Title 28 U.S.C. § 2202 provides that, "[f]urther necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment."

*Lawson v. Callahan*, 111 F.3d 403, 405 (5th Cir. 1997). Moreover, the Declaratory Judgment Act authorizes declaratory relief only in a "case of actual controversy." Title 28 U.S.C. § 2201 . This requirement is the same as the "case or controversy" requirement of Article III of the United States Constitution. *Middle South Energy, Inc. v. City of New Orleans*, 800 F.2d 488, 490 (5th Cir. 1986).

Declaratory relief is available when other bases for federal jurisdiction are present such as when the dispute is between parties of diverse citizenship[2] or the matter in question is governed by federal law.[3] *Commercial Metals Co. v. Balfour Guthrie, and Co.*, 577 F.2d 264, 269 (5th Cir. 1978). In the instant case, Nationwide is a foreign insurer incorporated under the laws of the State of Ohio. Lake Caroline, Inc., is a Mississippi corporation with its principal place of business in Madison County, Mississippi. A&F Properties, LLC, is a Mississippi Limited Liability Company with its principal place of business in Madison County, Mississippi. Nationwide contends, and no one disputes, that an underlying state court lawsuit involves a claim for an amount in excess of $10,000,000.00. So, the instant request for declaratory relief is predicated on Title 28 U.S.C. § 1332 (footnote 2). The complete diversity mandate in § 1332 is met because the plaintiff Nationwide is a foreign corporation, the defendants are resident citizens of Mississippi. *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2

---

[2]Title 28 U.S.C. § 1332 provides that, "(a) [t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between – (1) citizens of different States; ... ."

[3]Title 28 U.S.C. § 1331 provides that, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

L.Ed. 435 (1806)(requiring complete diversity between all plaintiffs and all defendants).    The amount in controversy for diversity jurisdiction purposes in a declaratory judgment action is, "the value of the right to be protected or the extent of the injury to be prevented," and may be determined by reference to the amount sought in state court, at least $10,000,000.00 in this case.  *Hartford Insurance Group v. Lou-Con Inc.*, 293 F.3d 908, 910 (5th Cir. 2002);  *Standard Fire Insurance Company v. Sassin,* 894 F.Supp. 1023, 1027 (N.D. Tex.1995), citing *Hardware Mutual Casualty Company v. Schantz*, 178 F.2d 779 (5th Cir. 1949).

Nationwide now moves for dismissal[4] or for summary judgment[5] on the issue of coverage under a liability policy issued to the insured Lake Caroline, Inc., claiming that no covered occurrence has taken place because the policy does not provide coverage for intentional conduct;  and that its "knowledge of falsity" exclusion applies to preclude the necessity of providing a defense or liability coverage.  Having heard the

---

[4]Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that, "[e]very defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: ...  (6) failure to state a claim upon which relief can be granted, ... ."

[5]Rule 56(b) of the Federal Rules of Civil Procedure provides that, "[a] party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof."

Rule 56(c) provides that, "[t]he motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."

arguments of the parties, this court is persuaded to grant Nationwide's motion for summary judgment.

## PERTINENT FACTS

Lake Caroline Inc. ("LCI") constructed Lake Caroline as a residential development during the 1980's in Madison County, Mississippi. On August 7, 1989, upon the petition of LCI, the Madison County Board of Supervisors re-zoned and reclassified 3,047.8409 acres from "A-1 Agricultural" to "P-1 Planned Unit Development." According to A&F Properties, LLC ("A&F"), LCI presented a plan for their residential development to the Madison County Board of Supervisors which is referred to as the "1989 Plan." The 1989 Plan, however, was never recorded and appears to have been lost.

Meanwhile, on December 4, 1989, LCI executed a "Declaration of Covenants, Conditions and Restrictions for Lake Caroline" covering the same 3,047.8409 acres re-zoned by the Madison County Board of Supervisors, thereby creating the Lake Caroline Planned Unit Development ("PUD"). Residential development began soon thereafter.

On September 27, 1995, LCI entered into an agreement titled "Contract for the Sale and Purchase of Real Property" with A&F, agreeing to convey to A&F 154 acres out of the Lake Caroline PUD lands in consideration for A&F's agreement to build and maintain a golf course on the acreage for not less than ten (10) years. Ultimately, by Warranty Deed dated November 3, 1995, LCI conveyed the 154 acres to A&F, the sole consideration being A&F's promise to operate the golf course for at least ten years.

LCI has presented the affidavit of the Madison County Zoning Administrator who states that from 1993 until February 25, 1998, no Master Plan of the Lake Caroline PUD was on file in the Madison County Zoning Administrator's office, nor was such a plan filed in the Madison County Chancery Clerk's office. The minutes of the Madison County Board of Supervisors reflect that on February 25, 1998, the Zoning Administrator presented a Master Plan for the Lake Caroline PUD dated February 19, 1998 ("1998 Master Plan"), and it was adopted. The February 25, 1998, Master Plan showed that the golf course had been constructed, so, when the 1998 Master Plan was adopted, it showed the existing conditions on and development of the Lake Caroline PUD, with the golf course.

The plaintiff Nationwide says that A&F, according to its state court pleadings, gave notice to the Madison County Board of Supervisors in late 2003, that it intended to develop the golf course into a residential subdivision at the end of the ten-year period. This matter, says Nationwide, initially was tabled by the Madison County Board of Supervisors. Then, in March of 2004, says Nationwide, A&F presented a second request which was denied by the Madison County Board of Supervisors based in part on its impression that the 1998 Master Plan was the only plan applicable to the Lake Caroline development. However, notes Nationwide, A&F was aggrieved at the actions taken by LCI at the hearing before the Madison County Board of Supervisors, actions which disparaged and discredited A&F in its attempt to gain approval for redeveloping the golf course into a residential subdivision.

Based on the denial of its request to redevelop the golf course into a residential subdivision, A&F filed suit in the Circuit Court of Madison County, Mississippi, on

5

December 9, 2004.  According to A&F's Complaint, the Madison County Board of Supervisors approved a 1989 Master Plan.  This plan, says A&F, initially was presented by LCI to the Madison County Board of Supervisors for the re-zoning and development of the property now called the Lake Caroline PUD.

The 1989 plan now cannot be found.  No one, says the complaint, realized that the 1989 Master Plan was lost until February 25, 1998.  The new 1998 Master Plan adopted by the Madison County Board of Supervisors showed the Lake Caroline PUD with the golf course.  Thus, when presented A&F's request to redevelop the golf course into a residential subdivision, the Madison County Board of Supervisors refused to do so.

According to A&F's complaint, LCI appeared at the hearing to oppose A&F's request to redevelop the golf course, "intentionally and/or maliciously" committed various acts in an effort to thwart A&F's redevelopment plan, and gave the Madison County Board of Supervisors knowingly false information about the 1989 agreement to build and maintain a golf course for ten years.  Specifically, A&F's compliant contends that LCI made representations to the Madison County Board of Supervisors  and to the public that LCI was the only developer within the Lake Caroline PUD, thereby indicating that A&F was not a developer and did not have rights to develop the golf course property in accordance with the applicable residential zoning ordinance.  Furthermore, says Nationwide, A&F charges that LCI made representations to the to the Madison County Board of Supervisors  and to the public that A&F was prohibited by the Declaration of Covenants, Conditions and Restrictions for Lake Caroline from developing the golf course property.  LCI's conduct, says A&F's

6

complaint, resulted in breach of contract, breach of warranty and slander of title.  The complaint, says Nationwide, characterizes LCI's conduct unambiguously as intentional and malicious, seeking to persuade the Madison County Board of Supervisors to deny A&F's request with information that LCI knew was false.  See paragraphs 14, 16, 17, 19, 24, 28, 30, and 32 of A&F's state court complaint.

   Nationwide has moved for summary judgment in the instant case, contending that its insurance policy issued to LCI contained a Commercial General Liability Coverage Form which provided coverages for bodily injury and property damage liability, personal and advertising injury liability and medical payments.  The policy, says Nationwide, covers the insured for accidental and negligent conduct, not for intentional conduct, and contains exclusions under each area of coverage.  Because A&F's complaint charges LCI with intentional conduct and slandering A&F's title to its real property with knowingly false information, Nationwide contends that the allegations of the complaint do not assert the type of  "bodily injury", "property damage" or "personal and advertising injury" covered by its policy.  Nationwide further contends that the events described in A&F's complaint are not an "occurrence" under Coverage A of the policy; and that the assertions of the complaint charging LCI with providing false information about A&F to the Madison County Board of Supervisors fall under the "knowledge of falsity" exclusion under Coverage B.

### **THE STATE COURT COMPLAINT**

   According to Nationwide, A&F's state court complaint asserts that LCI slandered its title to its golf course property by:  (1), presenting and relying only upon the 1998 Master Plan before the Madison County Board of Supervisors;  (2),

requesting recognition and approval of only the 1998 Master Plan; and (3), being present at the Madison County Board of Supervisor's meetings to protest and object to A&F's attempt to re-zone its golf course property as A&F contends it had the right to do. A&F also asserts that its title has been slandered by LCI's refusal to allow A&F to pick a lot within a new development of the Lake Caroline subdivision as allegedly agreed to by the parties. A&F further asserts that it has been injured by LCI's refusal to recognize A&F as a developer in the Lake Caroline PUD. Finally, and most significantly, A&F asserts in its complaint that all the alleged conduct by LCI was intentional, tortious and malicious in nature. Nationwide notes particularly that in each count of the state court complaint A&F reiterates that all of LCI's actions were "intentional and/or malicious" in nature.

  Nationwide also points out that no bodily injury is asserted anywhere in A&F's complaint. "Bodily injury" under the definition contained in Nationwide's policy means bodily injury, sickness or disease sustained by a person, including death resulting from an occurrence or an accident. Any bodily injury expected or intended from the standpoint of the insured, says Nationwide, except for bodily injury inflicted by reasonable force to protect persons or property, is not covered.

  Next, Nationwide contends that the "occurrence" provision and the exclusion for "expected or intended injury" contained in the above language each operate to preclude coverage for any potential "property damage" or "bodily injury" in this case because the facts asserted by A&F in its complaint pertain only to intentional conduct. The occurrence provision and the exclusion, says Nationwide, preclude coverage only for "bodily injury" or "property damage" caused by intentional conduct.

Nationwide also refers to the complaint's assertion that LCI intended to, and did, conceal its intentional and malicious actions from A&F, and that statements made by LCI…were false, were known by LCI to be false, and were made for the purpose of preventing A&F from exercising its rights under its 1989 contract and/or its warranty deed."

## THE RELEVANT POLICY PROVISIONS

The policy of insurance provided to LCI by Nationwide is divided into three major coverage parts, two of which are in question in the instant case: Coverage A Bodily Injury and Property Damage Liability ("Coverage A") and Coverage B Personal and Advertising Injury Liability ("Coverage B").  Nationwide refers to the following provisions in support of its argument that no coverage is available in the instant case.

Coverage A provides, in relevant part, as follows:

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.  But:
(1) The amount we will pay for damages is limited as described in Section III - Limits of Insurance; and (2) Our right and duty to defend end when we have

used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C[6].

\*\*\*\*\*\*\*\*

b. This insurance applies to "bodily injury" and property damage" only if: (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

\* \* \*

This insurance does not apply to: a. Expected Or Intended Injury "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

\* \* \*

"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

2. Exclusions

a. Expected or Intended Injury – "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

\* \* \* \*

b. Contractual Liability – "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages (1) That the insured would have in the absence of the contract or agreement; or (2)

\* \* \* \*

---

[6]Coverage C is medical coverage which is not in question in this case.

m. Damage To Impaired Property Or Property Not Physically Injured – "Property damage" to "impaired property" or property that has not been physically injured, arising out of: (1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or (2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.  This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

* * * *

"Property damage" means:  a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it: or b. Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it."


* * * *

Coverage B provides, in relevant part, as follows:


**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

But:  (1) The amount we will pay for damages is limited as described in Section III - Limits of Insurance; and (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

11

* * * *

2. Exclusions

    b. Material Published with Knowledge Of Falsity – "Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

    e. Contractual Liability – "Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement;

* * * *

"Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:  d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; ... ."

Based on these provisions of the policy, Nationwide submits that it provides coverage for events that are accidents, and not for events that are expected or intended from the standpoint of the insured.  Thus, says Nationwide, if the court finds that A&F's complaint in state court sues LCI for intentional, malicious and knowingly false actions, these actions are not covered by Nationwide's policy, citing *Shelter Mutual Insurance Company v. Brown*, 345 F. Supp. 2d 645 (S.D.Miss. 2004), and *Farmland Mutual Insurance Company v. Scruggs*, 886 So.2d 714, 718-19 (Miss. 2004), and the instant case may be resolved in Nationwide's favor.

12

## **THE SUMMARY JUDGMENT STANDARD**

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact and the law entitles the movant to judgment.[7] The movant bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of ⋯ [the record], which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corporation v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Disputes about material facts are genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

The burden of proof is on the moving party to show that "there is an absence of evidence to support the nonmoving party's case." *Freeman v. Texas Department of Criminal Justice*, 369 F.3d 854, 860 (5th Cir. 2004). Once the moving party meets its initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *See* Rule 56(e)*,* Federal Rules of Civil Procedure. To survive summary judgment, the nonmovant must submit or identify evidence in the record to show the existence of a genuine issue of material fact as to each element of the cause of action. *See Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). All facts and inferences are viewed "in the light most favorable to the nonmoving party ... ." *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 454 (5th Cir. 2005). "An issue is 'genuine'

---

[7]Rule 56(c) of the Federal Rules of Civil Procedure provides in pertinent part that, "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. ... ."

if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Id*. "A fact issue is material if its resolution could affect the outcome of the action." *Id*. The nonmovant's burden is not met by mere reliance on the allegations or denials in the nonmovant's pleadings. *Morris v. Covan Worldwide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998); *Johnston v. City of Houston*, 14 F.3d 1056, 1060 (5th Cir. 1994).

## APPLICABLE LAW

The parties agree that this court's interpretation of the liability insurance policy in question and the duties of Nationwide are governed by Mississippi law. *American States Insurance Company v. Natchez Steam Laundry*, 131 F.3d 551, 553 (5th Cir. 1998). Under Mississippi law, an insurer's "duty to defend hinges on the allegations of the underlying complaint." *Id. See also, State Farm Mut. Automobile Insurance Company v. Taylor*, 233 So. 2d 805, 808 (Miss. 1970) ("the obligation of a liability insurer is to be determined by the allegations of the complaint or declaration").

"Mississippi has adopted the 'allegations of the complaint' rule (sometimes referred to as the eight-corners test) to determine whether an insurer has a duty to defend," pursuant to which the court reviews the allegations in the underlying complaint to see whether it states a claim that is within or arguably within the scope of the coverage provided by the insurance policy. *Ingalls Shipbuilding v. Federal Ins. Co.*, 410 F.3d 214, 225 (5th Cir. 2005). In so doing, the court compares "the words of the complaint with the words of the policy", looking "not to the particular legal theories" pursued by the plaintiff, "but to the allegedly tortious conduct underlying" the suit. *Id*.

*See also United States Fidelity & Guaranty Company v. Omnibank*, 812 So.2d 196, 200 (Miss. 2002). If the complaint alleges facts which are arguably within the policy's coverage, a duty to defend arises. *Id.*; *Ingalls Shipbuilding v. Federal Insurance Company*, 410 F.3d 214, 225 (5th Cir. 2005) (the court is to look at the words of the complaint and compare those to the wording of the policy).

A "duty to defend under Mississippi law arises if the suit in question 'respects the insurance afforded by the terms of the policy.'" *Merchants Company v. American Motorists Insurance Company*, 794 F.Supp. 611, 616 (S.D. Miss.1992), quoting *Mavar Shrimp and Oyster Company v. United States Fidelity & Guaranty Company*, 187 So.2d 871 (Miss. 1966). This means that, "if the suit is within the coverage afforded by the policy, then the insurer has a duty to defend its insured. The fact that a duty to defend arises when the suit is within the coverage is self-evident." *Id.*, at 617. Further, "ultimate liability by the insurer is not dispositive of its duty to defend. To the contrary, the duty to defend is broader than the insured's duty to indemnify under its policy of insurance: The insurer has a duty to defend when there is any basis for potential liability under the policy." *Id.*, at 617, quoting *CNA Casualty of California v. Seaboard Surety Co.*, 176 Cal.App.3d 598, 222 Cal.Rptr. 276 (1986); *Liberty Life Ins. Co. v. Commercial Union Ins. Co.*, 857 F.2d 945, 949 (4th Cir.1988); *see also Cullop v. Sphere Drake Insurance Company*, 129 F.Supp.2d 981, 982-83 (S.D. Miss. 2001) (same); *see E.E.O.C. v. Southern Publishing Company, Inc.*, 705 F.Supp. 1213, 1218 (S.D. Miss.1988), *aff'd*, 894 F.2d 785 (5th Cir. 1990)( duty to defend also arises when a potential for coverage exists).

**ANALYSIS**

In the instant case, Nationwide contends that it has no duty to defend LCI the underlying lawsuit or to provide coverage because the allegations of A&F's complaint state no facts which bring the alleged injuries within the coverage of Nationwide's policy. *Mulberry Square Productions, Inc. v. State Farm Fire & Casualty Company*, 101 F.3d 414, 421 (5th Cir. 1996), quoting *E.E.O.C. v. Southern Publishing Company*, 705 F.Supp., at 1215. Instead, says Nationwide, the complaint clearly asserts intentional conduct not covered by the policy.

LCI responds that a narrow exception to Mississippi's general rule will impose a duty to defend upon an insurer who has knowledge, or could obtain knowledge through a reasonable investigation, of the existence of facts that trigger coverage. *State Farm Mutual Automobile Insurance Company v. Taylor*, 233 So.2d 805, 808 (Miss. 1970). In *State Farm*, 233 So.2d at 808, the court observed that "a divergence may exist between the facts as alleged in the petition and the actual facts as they are known to or reasonably ascertainable by the insurer, in which latter case the insurer has a duty to defend ... ." Similarly, an insurer may be obligated to defend if it later learns or is apprised of facts which indicate coverage." *American States Insurance Company v. Natchez Steam Laundry*, 131 F.3d 551, 553 (5th Cir. 1998). LCI contends that Nationwide has not read the underlying state court record, while Nationwide responds that it has done so and has ascertained no facts or other information which would apprise it of potential liability and the duty to defend.

This court has reviewed A&F's complaint in the underlying action which describes LCI's alleged misconduct, and contends that said conduct, was intentional, willful, and malicious. Thus, A&F has established for itself the burden of proving at trial that all of LCI's conduct was intentional, and not merely negligent or accidental. During oral argument before this court, the court asked LCI to point out which allegation(s) in the underlying complaint assert not only intentional acts, but also acts which were not intentional, such as negligence. LCI was unable to point to any assertions of conduct which was unintentional.

Therefore, this court is persuaded that A&F's complaint is grounded on allegations of intentional, wilful conduct by LCI. No basis has been shown by LCI as to how this court might construe the underlying complaint as asserting unintentional conduct.

So, as noted previously, the rule in Mississippi is that an insurer's duty to defend hinges on the allegations in the underlying complaint. Under Mississippi law, "an insurer's duty to defend an action against its insured is measured by the allegations in the plaintiff's pleadings regardless of the ultimate outcome of the action." *EEOC v. Southern Publication Company*, 894 F.2d 785, 789 (5th Cir. 1990). So, even if A&F's proof at trial might fall short of showing willful, malicious and/or intentional conduct on the part of LCI, this court is bound by Mississippi's "allegations of the complaint" rule (the eight-corners test), and hereby declares that Nationwide has no duty to defend LCI in the underlying state court action since the allegations of the underlying complaint fail to state a claim that is within or arguably within the scope of

the coverage provided by Nationwide's policy. *Ingalls Shipbuilding v. Federal Ins. Co.*, 410 F.3d at 225.

## **CONCLUSION**

Therefore, based on the foregoing authority, this court finds that the motion of the plaintiff Nationwide Mutual Insurance Company for summary judgment [**docket no. 12**] is well taken and the same is granted.

**SO ORDERED AND ADJUDGED,** this the 28th day of September, 2006.

                **s/ HENRY T. WINGATE**

                _____
                **CHIEF UNITED STATES DISTRICT JUDGE**

CIVIL ACTION NO. 3:05-cv-690WS
Memorandum Opinion and Order
      Granting Summary Judgment